## STATE EX REL. ROBERT HALL v. WILLIAM McRAE AND OTHERS.

227 N. W. 2d 557.

March 14, 1975—No. 45226.

*Melvin B. Goldberg, James P. Cullen,* and *Thomas G. Rowe,* Legal Assistance to Minnesota Prisoners, *C. Paul Jones,* State Public Defender, and *Cynthia Fischer,* Law Student, for appellant.

*Warren Spannaus,* Attorney General, *Peter W. Sipkins,* Solicitor General, *Richard G. Mark,* Assistant Solicitor General, and *Gilbert S. Buffington,* Special Assistant Attorney General, for respondents, Superintendent, State Reformatory for Men; Commissioner of Corrections; and Minnesota Corrections Authority.

Heard before Rogosheske, Kelly, and Yetka, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

Appeal by Robert Hall from an order discharging a writ of

habeas corpus. Appellant's contention that he has been deprived of due process and equal protection is based upon the failure of the Minnesota Corrections Authority to provide treatment pursuant to a medical parole granted to him.

Appellant was confined at the State Reformatory for Men at St. Cloud following a conviction of aggravated assault and was serving an indeterminate sentence not to exceed 10 years. Following extensive investigation by the corrections authority and two psychological evaluations at appellant's expense, all parties agreed that he was in need of specialized treatment. On November 29,1973, appellant was granted a medical parole for the particular purpose of receiving aversion therapy, a treatment designed to rehabilitate sexual offenders. It was first contemplated, as evidenced in the record, that appellant would be received at Hastings State Hospital, in an open setting, and receive the aversion therapy under the guidance of Dr. William W. Duffy at the Center for Behavior Modification in Minneapolis. This plan was subsequently modified to provide that appellant would stay at Anoka State Hospital while receiving the treatment.

Despite exhaustive attempts by the corrections authority and its personnel to secure hospital placement, both at Hastings as originally contemplated in the medical parole agreement and at Anoka, such efforts were unavailing. The cause of the failure to provide treatment was ultimately the inability of appellant to defray the expenses of his rehabilitation.

On April 16, 1974, appellant sought a writ of habeas corpus challenging the validity of his continued confinement at the reformatory for a period of nearly 5 months following the grant of parole. To date, there has been no commencement of the aversion therapy program and appellant remains confined at the reformatory. Appellant contends that his indigence has prevented him from obtaining recommended and otherwise available treatment, that the commissioner of corrections is empowered by statute to provide this treatment for indigents, and that appellant's

extended incarceration beyond a reasonable release period is tantamount to a de facto revocation of parole.

Respondents do not question the reasonableness of the treatment, its probability of success, or its beneficial nature, but deny the availability of statutory funds to secure medical or psychiatric treatment for indigent medical parolees. They further contend that the corrections authority, pursuant to Minn. St. 243.12 and 609.12, subd. 1, may amend or modify the terms of a medical parole, conditional in nature, when the conditions originally imposed cannot be met. This, they assert, is the situation presented here, which justifies the temporary delay in effectuating the medical parole pending the availability of a suitable and viable alternative treatment program.

Necessary to our determination is a recognition of various statutory procedures which may be utilized to promote basic rehabilitative objectives. The legislature has attempted, as exemplified by Minn. St. 246.43, to establish proper channels for obtaining diagnosis and treatment for persons who are afflicted with certain social and behavioral problems. That it was cognizant of the lack of proper facilities under the immediate auspices and control of the commissioner of corrections is evidenced by provisions which allow that, under certain conditions, custody of such persons might be placed with the commissioner of public welfare.[1]

Yet there remained, as evidenced by the facts presented here,

---

[1] When an individual is convicted of various enumerated offenses, or other nonspecified sex crimes, the court is empowered to commit him to the commissioner of public welfare for a presentence examination. Minn. St. 246.43, subds. 1 and 2. The obvious purpose behind this examination is to determine whether any psychological treatment may be necessitated in lieu of or simultaneously with incarceration. If specialized treatment is in order, the court may alternatively order probation with the requirement that the defendant secure treatment as ordered by the court or commit him to the custody of the commissioner of public welfare for implementation of the recommendation. Minn. St. 246.43, subd. 6.

those situations in which it was determined during incarceration that a program of rehabilitation was warranted. The lack of established procedures by which the commissioner of corrections could provide these services to those in his custody apparently prompted recent legislation, the interpretation of which is necessitated by this appeal.

Pursuant to Minn. St. 241.32, subd. 1, first enacted in 1971, the commissioner of corrections is empowered to contract with agencies to utilize preexisting facilities to promote specialized care and treatment of persons under his control.[2] Such statutory language necessarily implies recognition that the commissioner of corrections is unable to provide extensive services of this nature without this coordination with other authorities.

Subsequently, in an effort to appropriate sufficient funds to enable the commissioner of corrections to adequately utilize this contract power, L. 1973, c. 765, § 3, subd. 3, was enacted, and provides an appropriation as follows:

"Subd. 3. Medical and Psychiatric Services.
"1974........$1,500,000.
"The amount appropriated by this item shall be used for psychiatric services and to cover the expense of providing secure hospital care for inmates and persons furnished in hospitals not under supervision of the commissioner of corrections. All reimbursements received for such medical services shall be credited to this account and become a part thereof.

"The commissioner of corrections may contract with any other state department or agency to obtain psychiatric services for the department of corrections. This appropriation is in addition to

---

[2] Minn. St. 241.32, subd. 1, provides: "The commissioner of corrections may establish and operate community correctional programs or contract with existing public and private agencies for separate custody or specialized care and treatment of persons under his custody and control or under the custody and control of the Minnesota corrections authority or on conditional release under section 241.26."

funds for psychiatric services provided in the appropriations for the individual institutions."

The respondents would have this court strictly interpret the phrase "inmates and persons" to the exclusion of appellant. His status as a parolee, medical or otherwise, would, they contend, remove him from the purview of the language employed. However, to us this statutory language is unambiguous. To hold that one who has been granted a medical parole does not fall within the statutory categories of "inmates and persons," would surely. be an anomaly, for such a person is otherwise subject to the control of the corrections authorities. Further, such an interpretation would frustrate the very purpose of this legislation, which is the cooperative utilization of public institutional facilities and the coordination of agency efforts to facilitate achievement of rehabilitative correctional goals.

We therefore conclude that legislative authority enables the commissioner of corrections to utilize appropriated public funds for the rehabilitative treatment of an indigent in his custody who not only consents to, but also seeks, such treatment. In light of this determination that public funds are available, we need not consider the constitutional issues raised by appellant relating to his continued confinement following the grant of the medical parole or the applicability, to these particular facts, of the statutory power of the corrections authority to modify or amend the terms of a parole.

We do not know from the record whether respondents have reasons for denying appellant treatment other than the financial question raised in this appeal. Nor is an appellate court in a position to determine from the record the advisability, availability, or the danger involved in granting of treatment in the present facilities available to the state for such treatment.

Our decision is limited to the issue of whether state funds are available and intended to be used for the proper treatment of indigents. We hold that they are.

The case is remanded to the district court to determine

whether it is feasible for the state to make available to appellant treatment, whether an accepted mode of treatment is in fact available and appropriate for him, in what setting such treatment would be given, and whether such treatment can be given without involving danger to the public.

Remanded to the district court.